1  Marc S. Stern                                    Hon. Marc Barecca
   1825 NW 65th St.                                 Chapter 13
2  Seattle, WA 98117                                Hearing Date:
   206-448-7996                                     Hearing Time: 9:30 a.m.
3  marc@hutzbah.com                                 Response Date:

4

                    UNITED STATES BANKRUPTCY COURT
5             FOR THE WESTERN DISTRICT OF WASHINGTON

6                                              NO.  10-15781
   In re                              )
7                                     )       REPORT TO COURT AS TO STATUS OF
   MICHAEL REID MOI,                  )       SALE OF 15TH AVENUE NW PROPERTY
8                                     )
                    Debtor.           )
9  _____   )

10         Marc S. Stern, attorney for the debtor reports to the court as follows:

11         1.      An amended plan providing for the sale, on a credit basis is attached to this report.

12 It will be filed when there is a determination of whether a sale will take place or not.

13         2.      Attached hereto as Exhibit 2 is a proposed order authorizing the sale and making

14 the appropriate conditions.

15         3.      Attached hereto as Exhibit 3 is a copy of a title from April of 2010 on the

16 property.  It is the only title report that I have.  I believe that I have seen a subsequent title report

17 with additional judgments, however, I do not have it.

18         4.      Subsequently to the hearing on approval of sale I have had communication from

19 both Scott Wakefield and Dillon Jackson, respectively the Real Estate Agent and Attorney for

20 Mr. Hicks, the purchaser.  As of the date of this report, I am not sure whether we still have a sale.

21         5.      I am informed that because of the difficulty Mr. Hicks may withdraw his offer or

22 may make an all cash offer at a substantially lower price.  However, I do not know.

23         6.      Attached hereto as Exhibit 3 are copies of the proposed promissory note and deed

24 of trust.  They were originally attached to the Purchase and Sale Agreement previously filed with

25 the court.

26         Respectfully submitted this March 1, 2011

27                                    /s/ Marc S. Stern
                                      Marc S. Stern
28                                    WSBA 8194
                                      Attorney for Debtor

MARC S. STERN
ATTORNEY AT LAW
1825 NW 65TH STREET
SEATTLE, WA 98117
(206)448-7996

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON

| In re: | Case No. |
|---|---|
| MICHAEL REID MOI | CHAPTER 13 PLAN<br><br>_ Original  _XX_Amended |
| Debtor(s). | Date: ___March 1, 2011_____ |
| | |

### I.   Introduction:
A.   Debtor is eligible for a discharge under 11 USC § 1328(f) (check one):

_ **X** __ Yes

_____ No

B.   Means Test Result.  Debtor is (check one):

_____ a below median income debtor

_____ an above median income debtor with positive monthly disposable income

_XX_ an above median income debtor with negative monthly disposable income

### II.  Plan Payments:
No later than 30 days after the filing of the plan or the order for relief, whichever date is earlier, the debtor will commence making payments to the Trustee as follows:

    A.   AMOUNT: **$ 2400**

    B.   FREQUENCY (check one):

  _ **XX** __Monthly

  ___Twice per month

  _ _Every two weeks

  ___Weekly

    C.   TAX REFUNDS: Debtor (check one): ___COMMITS;  _ **XX** __DOES NOT COMMIT; all tax refunds to funding the plan. Committed refunds shall be paid in addition to the plan payment stated above. If no selection is made, tax refunds are committed.

    D.   PAYMENTS: Plan payments shall be deducted from the debtor's wages unless otherwise agreed to by the Trustee or ordered by the Court.

    E.   OTHER:

      2.  The recycles and purchases and sells recycled stuff.  The debtor intends to continue with this business.

      3. The debtor will list and sell the Magnolia Lot

      4. The debtor will sell his real property on 15th Ave. NW in Ballard.  The sale will be free and clear of liens, which liens would attach to the proceeds in the same relative rank to which they attached to the property.  The sale will be made on a seller financed basis with the purchaser putting $100,000 down.  The balance will be amortized over 30 years wit  % as set forth in the Purchase and Sale Agreement.  There will be a balloon as the last payment under the plan herein.  The note shall be held in escrow and escrow shall survive dismissal or conversion.  Escrow shall be instructed to make the payments to the Chapter 13 trustee.  Section 506(c) costs of sale will be paid from the original proceeds.

### III. Plan Duration:
The intended length of the plan is 36  months, and may be extended up to 60 months after the first payment is due if necessary for completion.  The plan's length shall not be less than the debtor's applicable commitment period as defined under 11 U.S.C. §§ 1322(d) and 1325(b)(4).

**IV.  Distribution of Plan Payments:**

Upon confirmation, the Trustee shall disburse funds received in the following order and creditors shall apply them accordingly, PROVIDED THAT disbursements for domestic support obligations and federal taxes shall be applied according to applicable non-bankruptcy law:

    A.  ADMINISTRATIVE EXPENSES:

        1.  <u>Trustee</u>. The percentage set pursuant to 28 USC §586(e).

        1.  <u>Other administrative expenses</u>. As allowed pursuant to 11 USC §§ 507(a)(2) or 707(b).

        1.  <u>Attorney's Fees</u>: Pre-confirmation attorney fees and costs shall not exceed  $30,000.00.  $3,000 less filing fees and credit counseling expenses  was paid prior to filing.  To the extent pre-confirmation fees and costs exceed $3,500, an appropriate application, including a complete breakdown of time and costs, shall be filed with the Court within 21 days of confirmation.

Approved pre-confirmation fees shall be paid as follows (check one):

        a. **XX** Prior to all creditors;

        b. _____ Monthly payments of $_____;

        c _____ All remaining funds available after designated monthly payments to the following creditors:_____.

        d. _____ Other:_____.

If no selection is made, fees will be paid after monthly payments specified in Sections IV.B and IV.C.

    B.  CURRENT DOMESTIC SUPPORT OBLIGATION: Payments to creditors whose claims are filed and allowed pursuant to 11 USC § 502(a) or court order as follows (if left blank, no payments shall be made by the Trustee):

| Creditor | Monthly amount |
|---|---|
| NONE | |

    C.  SECURED CLAIMS: Payments will be made to creditors whose claims are filed and allowed pursuant to 11 USC § 502(a) or court order, as stated below.  Unless ranked otherwise, payments to creditors will be disbursed at the same level.  Secured creditors shall retain their liens until the payment of the underlying debt, determined under nonbankruptcy law, or discharge under 11 USC § 1328, as appropriate.  Secured creditors, other than creditors holding long term obligations secured only by a security interest in real property that is the debtor's principal residence, will be paid the principal amount of their claim or the value of their collateral, whichever is less, plus per annum uncompounded interest on that amount from the petition filing date.

Interest rate and monthly payment in the plan control unless a creditor timely files an objection to confirmation. If a creditor timely files a proof of claim for an interest rate lower than that proposed in the plan, the claim shall be paid at the lower rate.  Value of collateral stated in the proof of claim controls unless otherwise ordered following timely objection to claim. The unsecured portion of any claim shall be paid as a nonpriority unsecured claim unless entitled to priority by law.

**Only creditors holding allowed secured claims specified below will receive payment from the Trustee.** If the interest rate is left blank, the applicable interest rate shall be 12%.  If overall plan payments are sufficient, the Trustee may increase or decrease post-petition installments for ongoing mortgage payments, homeowner's dues and/or real property tax holding accounts based on changes in interest rates, escrow amounts, dues and/or property taxes.

      1.  <u>Continuing Payments on Claims Secured Only by Security Interest in Debtor's Principal Residence</u> (Interest included in payments at contract rate, if applicable):

| Rank | Creditor | Nature of Debt | Property | Monthly Payment |
|---|---|---|---|---|
| 1 | Aurora Loan Services | Mortgage | Residence | 1700 |
| | | | | |
| | | | | |

2. <u>Continuing Payments on Claims Secured by Other Real Property</u> (Per annum interest as set forth below):

| Rank | Creditor | Nature of Debt | Property | Rate Monthly Payment | Interest Rate |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

3. <u>Cure Payments on Mortgage/Deed of Trust/Property Tax Arrearage</u> (If there is a property tax arrearage, also provide for postpetition property tax holding account at Section XII):

\

| Rank | Periodic Payment | Creditor | Property | Arrears to be cured | Interest rate |
|---|---|---|---|---|---|
| 1 | 225.00 | Aurora Loan Services | Residence | 8000 | =0= |
| | | | | | |
| | | | | | |
| | | | | | |

4. <u>Payments on Claims Secured by Personal Property</u>:

    a. **<u>910 Collateral</u>**.

The Trustee shall pay the contract balance as stated in the allowed proof of claim for a purchase-money security interest in any motor vehicle acquired for the personal use of the debtor(s) **within 910 days** preceding the filing date of the petition or in other personal property acquired within **one year** preceding the filing date of the petition as follows. Debtor stipulates that pre-confirmation adequate protection payments shall be paid by the Trustee as specified upon the creditor filing a proof of claim. If no amount is specified, the Trustee shall pay the amount

stated as the "Equal Periodic Payment".

| **Rank** | Creditor | Description of Collateral | Equal Periodic Payment | Pre-confirmation Adequate Protection Payment | Interest Rate |
|---|---|---|---|---|---|
| | | | | | |

      b.  **Non-910 Collateral**.

The Trustee shall pay the value of collateral stated in the proof of claim, unless otherwise ordered following timely objection to the claim, for a purchase-money security interest in personal property which is non-910 collateral. Debtor stipulates that pre-confirmation adequate protection payments shall be paid by the Trustee as specified upon the creditor filing a proof of claim. If no amount is specified, the Trustee shall pay the amount stated as the "Equal Periodic Payment".

| **Rank** | Equal Periodic Payment | Creditor | Debtor's Value of Collateral | Description of Collateral | Pre-Confirmation adequate Protection Payment | Contract Interest Rate |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

    D.   PRIORITY CLAIMS: Payment in full, on a pro rata basis, of filed and allowed claims entitled to priority in the order stated in 11 USC § 507(a).

    E.   NONPRIORITY UNSECURED CLAIMS: From the balance remaining after the above payments, the Trustee shall pay filed and allowed nonpriority unsecured claims as follows:

        1.   Specially Classified Nonpriority Unsecured Claims. The Trustee shall pay the following claims prior to other nonpriority unsecured claims as follows:

| Rank | Creditor | Amount of Claim | Percentage to be paid | Reason for Classification |
|---|---|---|---|---|
| | | | | |
| | | | | |

        2.   Other Nonpriority Unsecured Claims (check one):

          a.   __X___ 100% paid to allowed nonpriority unsecured claims. **OR**

          b.   _____ Debtor shall pay at least $ -0- to allowed nonpriority unsecured claims over the term of the plan. Debtor estimates that such creditors will receive approximately-0- % of their allowed claims.

**V.  Secured Property Surrendered**:

The secured property described below will be surrendered to the following named creditors on confirmation. Upon confirmation, all creditors to which the debtor is surrendering property pursuant to this section are granted relief from the automatic stay to enforce their security interest against the property including taking possession and sale.

**Creditor**                                                          **Property to be Surrendered**

**VI**. **Executory Contracts and Leases**:
The debtor will assume or reject executory nonresidential contracts or unexpired leases as noted below. Assumption will be by separate motion and order, and any cure and/or continuing payments will be paid directly by the debtor under Section VII, unless otherwise specified in Section XII with language designating that payments will be made by the Trustee, the amount and frequency of the payments, the ranking level for such payments with regard to other creditors, the length of the term for continuing payments and the interest rate, if any, for cure payments. Any executory contract or unexpired lease not assumed pursuant to 11 USC § 365(d) is rejected. If rejected, the debtor shall surrender any collateral or leased property and any duly filed and allowed unsecured claim for damages shall be paid under Section IV.E.2.

**Contract/Lease**                                                   **Assumed or Rejected**

**VII.**      **Payments to be made by Debtor and not by the Trustee:**
The following claims shall be paid directly by the debtor according to the terms of the contract or support or withholding order, and shall receive no payments from the Trustee. (Payment stated shall not bind any party.)

A.  DOMESTIC SUPPORT OBLIGATIONS: The claims of the following creditors owed domestic support obligations shall be paid directly by the debtor as follows:

| Creditor | Current Monthly Support Obligation | Monthly Arrearage Payment |
| --- | --- | --- |
| NONE | | |
| | | |

B.  OTHER DIRECT PAYMENTS:

| Creditor | Nature of Debt | Amount of Claim | Monthly Payment |
| --- | --- | --- | --- |
| None | | | |
| | | | |

**VIII.**      **Revestment of Property**
Unless otherwise provided in Section XII, during the pendency of the plan all property of the estate as defined by 11 USC § 1306(a) shall remain vested in the debtor, except that earnings and income necessary to complete the terms of the plan shall remain vested in the Trustee until discharge. The debtor shall not, without approval of the Court, sell or otherwise dispose of or transfer real property other than in accordance with the terms of the confirmed plan.

**IX. Liquidation Analysis Pursuant to 11 USC § 1325(a)(4)**
The liquidation value of the estate is $1,000,000. In order to obtain a discharge, the debtor must pay the liquidation value or the total of allowed priority and nonpriority unsecured claims, whichever is less. Under 11 USC §§

1325(a)(4) and 726(a)(5), interest on allowed unsecured claims under Section IV.D and IV.E shall be paid at the rate of -0-% per annum from the petition filing date (no interest shall be paid if left blank).

**X.  Other Plan Provisions:**
    A.   No funds shall be paid to nonpriority unsecured creditors until all secured, administrative and priority unsecured creditors are paid in full, provided that no claim shall be paid before it is due.
    B.   Secured creditors shall not assess any late charges, provided payments from the plan to the secured creditor are current, subject to the creditor's rights under state law if the case is dismissed.
    C.   If a secured creditor elects to charge debtor any fee, expense or cost permitted under the contract, the creditor shall give written notice to the debtor and debtor's counsel within 30 days of the assessment.
    D.   Mortgage creditors shall notify the Trustee, debtor and debtor's counsel within 60 days of any change in the regular monthly payment (including the escrow account, if applicable).
    E.   Provision by secured creditors or their agents or attorneys of any of the notices, statements or other information provided in this section shall not be a violation of the 11 USC § 362 automatic stay or of privacy laws.

**XI.  Certification:**
    A.   The debtor certifies that all post-petition Domestic Support Obligations have been paid in full on the date of this plan and will be paid in full at the time of the confirmation hearing. Debtor acknowledges that timely payment of such post-petition Domestic Support Obligations is a condition of plan confirmation pursuant to 11 USC § 1325(a)(8).
    B.   By signing this plan, the debtor and counsel representing the debtor certify that this plan does not alter the provisions of Local Bankruptcy Form 13-4, except as provided in Section XII below. Any revisions to the form plan not set forth in Section XII shall not be effective.

**XII.  Additional Case-Specific Provisions**: (must be separately numbered)
    A.   Prior to filing the debtor borrowed approximately $6,000 from his mother, secured by a deed of trust, to redeem real property.  The debtor is pursuing the redemption.  The property is tax assessed at $461,000.  The amount of redemption is less than $6,000.  Other than the redemption, the property is owned free and clear of all liens.

Marc S. Stern
Attorney for Debtor(s)

_____       ██████████    \_\_\_\_\_6049_____   ██████ ██\_\_
Date                                                        DEBTOR                Last 4 digits SS#                         Date

Marc S. Stern
1825 NW 65th St.
Seattle, WA 98117
206-448-7996
marc@hutzbah.com

Hon. Marc Barreca
Chapter 13
Hearing Date: January    , 2011
Hearing Time: 9:30 a.m.
Response Date: January    , 2011

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

NO.  10-15781

In re

MICHAEL REID MOI,

        Debtor.

)
)
)
)
)

ORDER APPROVING SALE FREE AND
CLEAR OF LIENS

This matter came on regularly for hearing before the undersigned Judge of the above

entitled court upon the Motion of the Debtor for an Order Authorizing Sale of Property Fee and

Clear of Liens.  The court considered the records and files herein, heard the argument of counsel,

and, now, deeming itself fully advised in the premises, it is

ORDERED that the debtor is authorized to sell the property located at 4900 - 15th Avenue

NW, Seattle, WA 98107, the legal description of which is follows:

Lot 22, Block 161, "A re-plat of Blocks 65, 66, 158, 159, 160, 161
and 163, Gilman Park", according to the plat thereof recorded in
Volume 21 of plats, page 19 in King County, Washington;

Together with that portion of vacated alley adjoining, which upon
vacation, attached to said property by operation of law as provided
by ordinance number 100114 of the city of Seattle, Recorded
August 5, 1971, under recording number 7108050311;

Except the West 12 feet condemned in King County Superior
Court Cause No. 502446 for 15th Avenue NW

free and clear of all liens and encumbrances, including the probate estate of Sherri Moi, which

liens and encumbrances shall attach to the proceeds in the same relative rank and priority to

which they attached to the property in accordance with the Purchase and Sale Agreement on file

herein; and it is further

MARC S. STERN
ATTORNEY AT LAW
1825 NW 65TH STREET
SEATTLE, WA 98117
(206)448-7996

1    ORDERED that escrow may pay from closing the normal costs of sale including, without

2    limitation, real estate commissions, excise tax, pro rated property taxes, title insurance fees; and

3    it is further

4    ORDERED that Escrow may pay directly to creditors, in order of priority, the amount due

5    to lien claimants in order of priority as established by the title report. To the extent that there is

6    any dispute as to amount, payment shall await a further court order.

7    ORDERED that based upon the showing made it appears that the sale is entered into by

8    the buyer in good faith and thus the provision of 11 U.S.C. 363(m) shall apply to this sale; and it

9    is further

10   ORDERED, that this order shall be effective immediately upon entry; and it is further

11   ORDERED that the note and deed of trust shall be in favor of Michael Moi. However,

12   the original of said documents shall be 1)___ delivered to the Chapter 13 trustee 2)____ held by

13   escrow, 3)____ delivered to Marc S. Stern, attorney at law, who shall hold said documents

14   pending further court order; and it is further

15   ORDERED that there shall be attached to the original of the note an allonge stating as

16   follows:

17           This note is executed as payment of a sale in a proceeding pursuant
             to Chapter 13 of Title 11 of the United States Bankruptcy Code.
18           All payments under the note shall be paid to the Chapter 13 Trustee
             in Cause No. 10-15781 in the United States Bankruptcy Court for
19           the Western District of Washington. This note may not be
             negotiated or surrendered until an Order from the Bankruptcy
20           Court is affixed hereto showing that this condition has been
             completed or waived;

21

22   and it is further

23   ORDERED that the all proceeds of the real property sale except those disbursed from

24   escrow to creditors in accordance with the terms of this order shall be paid to the Chapter 13

25   Trustee and all payments on the note shall be paid to the Chapter 13 trustee to fund the plan

26   herein; and it is further

27   ORDERED that payments shall continue to be made to the Chapter 13 Trustee until either

28   all allowed creditors are paid in full or the note is fully paid.; and it if further

**MARC S. STERN**
**ATTORNEY AT LAW**
**1825 NW 65TH STREET**
**SEATTLE, WA 98117**
**(206)448-7996**

1    ORDERED that this Order shall survive dismissal or conversion (voluntary or

2    involuntary) to another chapter of the Bankruptcy Code; and it is further

3    /////////

4    ORDERED that the forms of Promissory Note and Deed of Trust attached to the Purchase

5    and Sale Agreement herein are approved as to form; and it is further

6    ORDERED that creditors will retain their judgment liens on the remaining real estate

7    until paid in full.

8

9                              * * * END OF ORDER * * *

10

11                                        _____
                                          Marc Barecca
12   Presented by:                        United States Bankruptcy Judge
     /s/ Marc S. Stern
13   Marc S. Stern
     WSBA 8194
14   Attorney for Debtor

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MARC S. STERN**
**ATTORNEY AT LAW**
**1825 NW 65TH STREET**
**SEATTLE, WA 98117**
**(206)448-7996**


*Ballard*

# northpoint escrow + title

570 Kirkland Way, #100
Kirkland, WA 98033
Phone: 425-739-8887
Fax: 425-468-9125

## COMMITMENT FOR TITLE INSURANCE
## SCHEDULE A

1.  **Effective Date: April 6, 2010 at 8:00 a.m.  Commitment No.: NP - 30036344**

2.  **Policy or Policies to be issued:**

    **ALTA 2006 Loan Policy    General Schedule Rate**

    **Proposed Insured:    Direct Lending Group, Inc.**

    | | |
    |---|---|
    | **Amount:** | **$150,000.00** |
    | **Premium:** | **$1,080.00** |
    | **Tax:** | **$ 102.60** |
    | **Total:** | **$1,182.60** |

3.  **Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:**

    **Michael R. Moi and the Heirs and/or Devisees of Sherry D. Moi, deceased**

4.  **The land referred to in this Commitment is described as follows:**

    See Exhibit "A" attached hereto.

**Northpoint Escrow and Title, LLC**
**as agent for Lawyers Title Insurance Corporation**

*307, 379.⁵⁹*

# EXHIBIT "A"

LOT 22 IN BLOCK 161 OF "A RE-PLAT OF BLOCKS 65, 66, 158, 159, 160, 161 AND 163 OF GILMAN PARK", AS PER PLAT RECORDED IN VOLUME 21 OF PLATS, PAGE 19, RECORDS OF KING COUNTY AUDITOR;

TOGETHER WITH THAT PORTION OF VACATED ALLEY ADJOINING, WHICH UPON VACATION, ATTACHED TO SAID PROPERTY BY OPERATION OF LAW AS PROVIDED BY ORDINANCE NUMBER 100114 OF THE CITY OF SEATTLE, RECORDED  AUGUST 5, 1971, UNDER RECORDING NUMBER 7108050311;

EXCEPT THE WEST 12 FEET CONDEMNED IN KING COUNTY SUPERIOR COURT CAUSE NO. 502446 FOR 15TH AVENUE N.W.;

SITUATE IN THE CITY OF SEATTLE, COUNTY OF KING, STATE OF WASHINGTON.

# SCHEDULE B

**REQUIREMENTS:** Instruments necessary to create the estate or interest to be properly executed, delivered and duly filed for record.

**EXCEPTIONS:** Schedule B of the Policy or Policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

A.   Standard exceptions set forth on the Commitment Cover.

B.   Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

**SPECIAL EXCEPTIONS:**

1.   GENERAL PROPERTY TAXES AND SERVICE CHARGES, AS FOLLOWS, TOGETHER WITH INTEREST, PENALTY AND STATUTORY FORECLOSURE COSTS, IF ANY, AFTER DELINQUENCY: (1ST HALF DELINQUENT ON MAY 1; 2ND HALF DELINQUENT ON NOVEMBER 1)

TAX ACCOUNT NO.:   27608301975

| YEAR | BILLED | PAID | BALANCE |
|------|--------|------|---------|
| 2010 | $3,184.96 | $0.00 | $3,184.96 |
| 2009 | $2,976.79 | $0.00 | $2,976.79 |
| 2008 | $2,569.81 | $0.00 | $2,569.81 |
| 2007 | $2,701.22 | $0.00 | $2,701.22 |

TOTAL AMOUNT DUE, NOT INCLUDING INTEREST AND PENALTY: $11,432.78.

LEVY CODE:                                    0010
ASSESSED VALUE LAND:                     $200,000.00
ASSESSED VALUE IMPROVEMENTS:             $131,400.00

2.   FORECLOSURE COSTS, IF ANY, RESULTING FROM POSSIBLE TAX FORECLOSURE PROCEEDINGS.  CONTACT THE KING COUNTY COMPTROLLER'S OFFICE TO DETERMINE WHETHER THERE ARE ANY FORECLOSURE COSTS, WHICH ARE IN ADDITION TO INTEREST AND PENALTIES THAT MAY BE DUE.  COMPTROLLER'S PHONE NO.: 206-296-4184.

3.   ORDINANCE AND THE TERMS AND CONDITIONS THEREOF:

RECORDED:              AUGUST 05, 1971
RECORDING NO.:         7108050311
REGARDING:             VACATED STREETS WITH EASEMENT RIGHTS

## SCHEDULE B – continued

4.  PENDING PROBATE PROCEEDINGS.

|                          |                        |
|--------------------------|------------------------|
| DECEDENT:                | SHERRY D. MOI          |
| CASE FILED:              | APRIL 10, 2008         |
| PROBATE CASE NO.:        | 08-4-02733-1           |
| ATTORNEY FOR THE ESTATE: | JILL ELAINE BLISS      |

A PETITION FOR ORDER APPOINTING ADMINISTRATOR OF ESTATE AND ALLOWANCE OF CREDITOR CLAIM OF ADMINISTRATOR CREDITOR DOUGLAS KRUVER WAS ENTERED ON APRIL 10, 2008.  UPON FILING OF AN OATH OF ADMINISTRATOR AND UPON POSTING OF A BOND IN THE AMOUNT OF $450,000.00, LETTERS OF ADMINISTRATION WILL BE ISSUED TO JOHN O'BRIEN, SPECIAL ADMINISTRATOR, BY ORDER ENTERED ON OCTOBER 17, 2008, TO ADMINISTER REAL PROPERTY WITH KING COUNTY TAX PARCEL NOS. 026900-0245-01 AND 026900-0246-00 AND ANY ASSETS NECESSARY TO SATISFY THE CREDITOR CLAIMS OF THE PETITIONER.  ANY ENCUMBRANCE, SALE, CONVEYANCE OR CONTRACT TO CONVEY THE SUBJECT PROPERTY MUST BE AUTHORIZED BY PROPER COURT ORDER.  WE NOTE THAT THERE HAS BEEN NO FURTHER ACTION IN THIS CASE SINCE OCTOBER 17, 2008.

5.  PENDING PROBATE PROCEEDINGS UNDER A NON-INTERVENTION WILL.  AN ORDER GRANTING NON-INTERVENTION POWERS IS REQUIRED BEFORE THE PERSONAL REPRESENTATIVE WILL HAVE AUTHORITY TO TRANSFER OR ENCUMBER DECEDENT'S INTEREST IN THE LAND.

|                            |                     |
|----------------------------|---------------------|
| DECEDENT:                  | SHERRY DENISE MOI   |
| WILL FILED:                | MAY 12, 2008        |
| PERSONAL REPRESENTATIVE:   | MICHAEL REID MOI    |
| PROBATE CASE NO.:          | 08-4-03342-0SEA     |
| ATTORNEY FOR ESTATE:       | UNDISCLOSED         |

NOTE:  THE LAST ENTRY IN SAID CASE WAS ON OCTOBER 15, 2008, WHICH WAS THE PETITION FOR THE PROBATE OF THE WILL.

6.  POSSIBLE LIEN AGAINST THE ESTATE OF SHERRY MOI, DECEASED, PURSUANT TO RCW 43.20B.080 AND WAC 388-527-2730 THROUGH 2790, IN FAVOR OF THE STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES FOR RECOVERY OF COSTS OF MEDICAL CARE PROVIDED, IF ANY.

7.  LIEN OF STATE AND FEDERAL ESTATE TAXES, IF ANY, UPON THE ESTATE OF SHERRY MOI, DECEASED.

|                    |                                 |
|--------------------|---------------------------------|
| COUNTY OF:         | KING                            |
| PROBATE CASE NOS.: | 08-4-02733-1 AND 08-4-03342-0   |

8.  JUDGMENT:

|                          |                                                                            |
|--------------------------|----------------------------------------------------------------------------|
| AGAINST:                 | MICHAEL MOI, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHERRI MOI |
| IN FAVOR OF:             | DOUG KRUGER                                                                |
| AMOUNT:                  | $44,464.91, PLUS INTEREST AND FEES                                         |
| ENTERED:                 | FEBRUARY 16, 2007                                                          |
| KING COUNTY JUDGMENT NO.:| 07-9-04687-4                                                               |
| SUPERIOR COURT CAUSE NO.:| 06-2-32029-8                                                               |
| ATTORNEY FOR CREDITOR:   | JOSEPH LARS ROCKNE                                                         |

SAID JUDGMENT IS ALSO FILED OF RECORD IN THE AUDITOR'S OFFICE IN KING COUNTY UNDER RECORDING NO. 20080326001054.

## SCHEDULE B – continued

9.   JUDGMENT:

|  |  |
|---|---|
| AGAINST: | MICHAEL REID MOI |
| IN FAVOR OF: | STATE OF WASHINGTON |
| AMOUNT: | $1,819.00 PLUS INTEREST AND FEES |
| ENTERED: | AUGUST 25, 2008 |
| KING COUNTY JUDGMENT NO.: | 08-9-26068-8 |
| SUPERIOR COURT CAUSE NO.: | 07-1-05415-1 |
| ATTORNEY FOR CREDITOR: | KING COUNTY PROSECUTING ATTORNEY |

10.  JUDGMENT:

|  |  |
|---|---|
| AGAINST: | MICHAEL R. MOI AND SHERRY D. MOI |
| IN FAVOR OF: | DYNAMIC STRATEGIES, INC. |
| AMOUNT: | $34,822.94, PLUS INTEREST AND FEES |
| ENTERED: | DECEMBER 16, 2009 |
| KING COUNTY JUDGMENT NO.: | 09-9-41407-1 |
| SUPERIOR COURT CAUSE NO.: | 09-2-45245-8 |
| ATTORNEY FOR CREDITOR: | BRAD LYLE WILLIAMS |

SAID JUDGMENT IS ALSO FILED OF RECORD IN THE AUDITOR'S OFFICE IN KING COUNTY UNDER RECORDING NO. 20100112000749.

11.  PENDING ACTION IN KING COUNTY:

|  |  |
|---|---|
| SUPERIOR COURT CAUSE NO.: | 09-2-36968-2 SEA |
| BEING AN ACTION FOR: | DAMAGES |
| PLAINTIFF: | DOUG KRUGER |
| DEFENDANT: | MICHAEL MOI, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHERRY MOI |
| ATTORNEY FOR PLAINTIFF: | RICK J. WATHEN |

LIS PENDENS THEREOF RECORDED ON MARCH 19, 2010 AS RECORDING NO. 20100319001219.

NOTE: A DEFAULT JUDGMENT WAS FILED IN SAID CASE ON FEBRUARY 23, 2010 WITHOUT A SUMMARY AS REQUIRED UNDER R.C.W. 4.64.030.

12.  UNRECORDED LEASEHOLDS, IF ANY; RIGHTS OF VENDORS AND HOLDERS OF SECURITY INTERESTS ON PERSONAL PROPERTY INSTALLED UPON THE LAND; AND RIGHTS OF TENANTS TO REMOVE TRADE FIXTURES AT THE EXPIRATION OF THE TERM.

13.  MATTERS RELATING TO THE QUESTIONS OF SURVEY, RIGHTS OF PARTIES IN POSSESSION, AND UNRECORDED LIEN RIGHTS FOR LABOR AND MATERIAL, IF ANY, THE DISPOSITION OF WHICH WILL BE FURNISHED BY SUPPLEMENTAL REPORT.

NOTE: PLEASE ADVISE THE COMPANY AT LEAST THREE DAYS PRIOR TO CLOSING SO THAT WE MAY INSPECT THE LAND TO DETERMINE AND REPORT THE CURRENT STATUS OF THE ABOVE NOTED MATTERS.

## SCHEDULE B – continued

NOTE 1:  THERE MAY BE UNIFORM COMMERCIAL CODE (UCC) SECURITY INTERESTS FILED WITH THE DEPARTMENT OF LICENSING IN OLYMPIA, AFFECTING PERSONAL PROPERTY, CROPS OR AGRICULTURAL FACILITIES WHICH ARE NOT COVERED BY THE POLICY TO ISSUE.

NOTE 2:  BASED ON INFORMATION PROVIDED TO THE COMPANY, ON THE DATE OF THIS COMMITMENT IT APPEARS THAT THERE IS LOCATED ON THE LAND:

**COMMERCIAL/INDUSTRIAL STRUCTURE(S)**

KNOWN AS:
**4900 15TH AVENUE NW
SEATTLE, WA  98107**

NOTE 3:  IF YOU WOULD LIKE THE COMPANY TO ACT AS TRUSTEE IN THE PROPOSED DEED OF TRUST, PLEASE NOTE THAT **"LAWYERS TITLE INSURANCE CORPORATION"** MAY ACT AS TRUSTEE OF A DEED OF TRUST UNDER RCW 61.24.010(1).

NOTE 4:  THE COMPANY REQUIRES THE PROPOSED INSURED TO VERIFY THAT THE LAND COVERED BY THIS COMMITMENT IS THE LAND INTENDED TO BE CONVEYED IN THIS TRANSACTION. THE DESCRIPTION OF THE LAND MAY BE INCORRECT, IF THE APPLICATION FOR TITLE INSURANCE CONTAINED INCOMPLETE OR INACCURATE INFORMATION.  NOTIFY THE COMPANY WELL BEFORE CLOSING IF CHANGES ARE NECESSARY.  CLOSING INSTRUCTIONS MUST INDICATE THAT THE LEGAL DESCRIPTION HAS BEEN REVIEWED AND APPROVED BY ALL PARTIES.

NOTE 5:  THE FOLLOWING MAY BE USED AS AN ABBREVIATED LEGAL DESCRIPTION ON THE DOCUMENTS TO BE RECORDED, PER AMENDED RCW 65.04.  SAID ABBREVIATED LEGAL DESCRIPTION IS NOT A SUBSTITUTE FOR A COMPLETE LEGAL DESCRIPTION WITHIN THE BODY OF THE DOCUMENT.
**LOT 22, BLOCK 161 OF "A REPLAT OF BLOCKS 65, 66, 158, 159, 160, 161 AND 163 OF GILMAN PARK"**

NOTE 6:  WHEN SENDING DOCUMENTS FOR RECORDING, VIA U.S. MAIL OR SPECIAL COURIER SERVICE, PLEASE SEND TO THE FOLLOWING ADDRESS, UNLESS SPECIFIC ARRANGEMENTS HAVE BEEN MADE WITH YOUR TITLE UNIT:

NORTHPOINT ESCROW AND TITLE, LLC
155 NE 100TH STREET
SUITE 200
SEATTLE, WA  98125
ATTN:  RECORDING DEPT.

NOTE 7:  IN THE EVENT THAT THE COMMITMENT JACKET IS NOT ATTACHED HERETO, ALL OF THE TERMS, CONDITIONS AND PROVISIONS CONTAINED IN SAID JACKET ARE INCORPORATED HEREIN.  THE COMMITMENT JACKET IS AVAILABLE FOR INSPECTION AT ANY COMPANY OFFICE.

NOTE 8:  THE POLICY(S) OF INSURANCE MAY CONTAIN A CLAUSE PERMITTING ARBITRATION OF CLAIMS AT THE REQUEST OF EITHER THE INSURED OR THE COMPANY. UPON REQUEST, THE COMPANY WILL PROVIDE A COPY OF THIS CLAUSE AND THE ACCOMPANYING ARBITRATION RULES PRIOR TO THE CLOSING OF THE TRANSACTION.

**SCHEDULE B – continued**

## (END OF EXCEPTIONS)

Investigation should be made to determine if there are any sewer treatment capacity charges or if there are any service, installation, maintenance, or construction charges for sewer, water or electricity.

In the event this transaction fails to close, a cancellation fee will be charged for services rendered in accordance with our rate schedule.

Unless otherwise requested or specified herein, the forms of policy to be issued in connection with this Commitment will be the ALTA 2003 Homeowner's Policy, the ALTA 2006 Loan Policy, or, in the case of standard lender's coverage, the ALTA 2006 Standard Loan Policy

The Policy committed for or requested may be examined by inquiry at the office that issued the Commitment.  A specimen copy of the Policy form(s) referred to in this Commitment will be furnished promptly upon request.


CP1

Enclosures:
Sketch
Vesting Deed
Paragraphs  All Recorded Matters

Issued by



**INSURANCE    CORPORATION**

---

Lawyers Title Insurance Corporation <span style="float:right">**COMMITMENT FOR TITLE INSURANCE**</span>

**Lawyers Title Insurance Corporation**, a Nebraska corporation, herein called the Company, for a valuable consideration, hereby commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the exceptions and conditions and stipulations shown herein, the Exclusions from Coverage, the Schedule B exceptions, and the conditions and stipulations of the policy or policies requested.  (See the following pages for printed Exclusions from Coverage and Schedule B exceptions contained in various policy forms.)

This Commitment shall be effective only when the identity of the proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A hereof by the Company, either at the time of the issuance of this Commitment or by subsequent endorsement and is subject to the Conditions and Stipulations.

This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate 180 days after the effective date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company.

**NOTE:  THE POLICY COMMITTED FOR MAY BE EXAMINED BY INQUIRY AT THE OFFICE WHICH ISSUED THE COMMITMENT, AND A SPECIMEN COPY OF THE POLICY FORM (OR FORMS) REFERRED TO IN THIS COMMITMENT WILL BE FURNISHED PROMPTLY UPON REQUEST.**

LAWYERS TITLE INSURANCE CORPORATION

By:

SEAL

ATTEST <span style="float:right">President</span>

<span style="float:right">Secretary</span>

## COMMITMENT CONDITIONS AND STIPULATIONS

1.  The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.  If the proposed Insured has or acquires actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge.  If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions and Stipulations.

3.  Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment.  In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and Stipulations and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.  Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.  *The policy to be issued contains an arbitration clause.  All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  You may review a copy of the arbitration rules at< http://www.alta.org/>.*

Commitment Cover - WA (Revised 8-07)

# SCHEDULE OF EXCLUSIONS FROM COVERAGE

## AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
         or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

**AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (06-17-06)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

**AMERICAN LAND TITLE ASSOCIATION HOMEOWNER'S POLICY OF TITLE
INSURANCE FOR A ONE-TO-FOUR FAMILY RESIDENCE (10-22-03)**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:

   (a) building
   (b) zoning
   (c) Land use
   (d) improvements on the Land
   (e) Land division
   (f) environmental protection

   This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.

   This Exclusion does not limit the coverage described in Covered Risk 14, 15 16, 17 or 24.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.

3. The right to take the Land by condemning it, unless:

   (a) a notice of exercising the right appears in the Public Records at the Policy Date; or
   (b) the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.

4. Risks:
   (a) that are created, allowed, or agreed to by You, whether or not they appear in the Public records;
   (b) that are Known to You at the Policy Date, but not to Us, unless they appeared in the Public Records at the Policy Date;
   (c) that result in no loss to You; or
   (d) that first occur after the Policy Date – this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.

5. Failure to pay value for Your Title.

6. Lack of a right:
   (a) to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   (b) in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

The matters listed below each policy form are expressly excepted from the coverage of that policy and that policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason thereof.

## SCHEDULE B EXCEPTIONS APPEARING IN ALTA OWNER'S POLICY – STANDARD COVERAGE AND STANDARD COVERAGE LOAN POLICY

1. Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession, or claiming to be in possession, thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land, and that is not shown by the Public Records.
5. Any lien, or right to a lien, for labor, material, services or equipment, or for contributions to employee benefit plans, or liens under Workmans' Compensation Acts, not disclosed by the public records.
6. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) Indian treaty or aboriginal rights, including, but not limited to, easements or equitable servitudes; or, (d) water rights, claims or title to water, whether or not the matters excepted under (a), (b), (c) or (d) are shown by the public records.
7. Right of use, control or regulation by the United States of America in the exercise of powers over navigation; any prohibition or limitation on the use, occupancy or improvement of the land resulting from the rights of the public or riparian owners to use any waters which may cover the land or to use any portion of the land which is now or may formerly have been covered by water.
8. Any service, installation, connection, maintenance or construction charges for sewer, water, electricity, or garbage collection or disposal, or other utilities unless disclosed as an existing lien by the public records.

## SCHEDULE B EXCEPTIONS APPEARING IN ALTA OWNER'S POLICY – EXTENDED COVERAGE

1. Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Underground easements, servitudes or installations which are not disclosed by the public records.
3. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) Indian treaty or aboriginal rights, including, but not limited to, easements or equitable servitudes; or, (d) water rights, claims or title to water, whether or not the matters excepted under (a), (b), (c) or (d) are shown by the public records.
4. Right of use, control or regulation by the United States of America in the exercise of powers over navigation; any prohibition or limitation on the use, occupancy or improvement of the land resulting from the rights of the public or riparian owners to use any waters which may cover the land or to use any portion of the land which is now or may formerly have been covered by water.
5. Any service, installation, connection, maintenance or construction charges for sewer, water, electricity, or garbage collection or disposal, or other utilities unless disclosed as an existing lien by the public records.

## SCHEDULE B EXCEPTIONS APPEARING IN EXTENDED COVERAGE ALTA LOAN POLICY (06-17-06) and ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10-22-03)

No general exceptions appear in these policy forms.

© Copyright 1999 – 2005
Commercial Brokers Association
All Rights Reserved

**CBA**

# PROMISSORY NOTE

CBA Text Disclaimer:  Text deleted by licensee indicated by strike.
New text inserted by licensee indicated by small capital letters.

$ _____  _____  _____  _____

     Principal              Date              City            State

**FOR VALUE RECEIVED,** _____

hereinafter "Maker" promises to pay to _____

hereinafter "Holder" or order at _____

or other such place as may be designated by the Holder from time to time, the principal sum of _____ dollars ($_____), with interest thereon from _____ day of _____, _____ on the unpaid principal at the rate of _____ percent (_____ %) per annum as follows:

1. **INSTALLMENT PAYMENTS:**  Maker shall pay, (check one)

   a. ☐     **NO INSTALLMENTS.**  No installment payments are required.

   b. ☐     **PRINCIPAL and INTEREST INSTALLMENTS** of _____ dollars ($ _____ ).

   c. ☐     **INTEREST ONLY PAYMENTS** on the outstanding principal balance.

   **(The following must be completed if "b" or "c" is checked.)**

   The installment payments shall begin on the _____ day of _____, _____, and shall continue on the _____ day of each succeeding:  (check one)

   ☐ calendar month     ☐    sixth calendar month     ☐    other: _____

   ☐ third calendar month     ☐    twelfth calendar month _____

2. **DUE DATE:**  The entire balance of this Note together with any and all interest accrued thereon shall be due and payable in full on the _____ day of _____, _____.

3. **DEFAULT INTEREST:**  After maturity, or failure to make any payment, any unpaid principal shall accrue interest at the rate of _____ percent ( _____%) per annum (18% if not filled in) or the maximum rate allowed by law, whichever is less, during such period of Maker's default under this Note.

4. **ALLOCATION OF PAYMENTS:**  Each payment shall be credited first to any late charge due, second to interest, and the remainder to principal.

5. **PREPAYMENT:**  Maker may prepay all or part of the balance owed under this Note at any time without penalty.

6. **CURRENCY:**  All principal and interest payments shall be made in lawful money of the United States.

7. **LATE CHARGE:**  If Holder receives any installment payment more than _____ days (15 days if not filled in) after its due date, then a late payment charge of $ _____, or _____ percent ( _____ %) of the installment payment (5% of the installment payment if neither is filled in) shall be added to the scheduled payment.

8. **DUE ON SALE:**  (*OPTIONAL–Not applicable unless initialed by Holder and Maker to this Note*).  If this Note is secured by a Deed of Trust or any other instrument securing repayment of this Note, the property described in such security instruments may not be sold or transferred without the Holder's consent.  Upon breach of this

         Nov. 18, 2010                      12-02-2010

© Copyright 1999 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form No. N-1A
LPB 28A
Promissory Note
Rev. 12/99
Page 2 of 3

## PROMISSORY NOTE
### (CONTINUED)

provision, Holder may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.

_____          _____
                Maker (Initials)                                Holder (Initials)

9. **ACCELERATION:** If Maker fails to make any payment owed under this Note, or if Maker defaults under any Deed of Trust or any other instruments securing repayment of this Note, and such default is not cured within _____ days (30 days if not filled in) after written notice of such default, then Holder may, at its option, declare all outstanding sums owed on this Note to be immediately due and payable, in addition to any other rights or remedies that Holder may have under the Deed of Trust or other instruments securing repayment of this Note.

10. **ATTORNEYS' FEES AND COSTS:** Maker shall pay all costs incurred by Holder in collecting sums due under this Note after a default, including reasonable attorneys' fees, whether or not suit is brought. If Maker or Holder sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

11. **WAIVER OF PRESENTMENTS:** Maker waives presentment for payment, notice of dishonor, protest and notice of protest.

12. **NON-WAIVER:** No failure or delay by Holder in exercising Holder's rights under this Note shall be a waiver of such rights.

13. **SEVERABILITY:** If any clause or any other portion of this Note shall be determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other clause or portion of this Note, all of which shall remain in full force and effect.

14. **INTEGRATION:** There are no verbal or other agreements which modify or affect the terms of this Note. This Note may not be modified or amended except by written agreement signed by Maker and Holder.

15. **CONFLICTING TERMS:** In the event of any conflict between the terms of this Note and the terms of any Deed of Trust or other instruments securing payment of this note, the terms of this Note shall prevail.

16. **EXECUTION:** Each Maker executes this Note as a principal and not as a surety. If there is more than one Maker, each such Maker shall be jointly and severally liable under this Note.

17. **COMMERCIAL PROPERTY:** (*OPTIONAL--Not applicable unless initialed by Holder and Maker to this Note).* Maker represents and warrants to Holder that the sums represented by this Note are being used for business, investment or commercial purposes, and not for personal, family or household purposes.

**ORAL AGREEMENTS:** ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, TO EXTEND CREDIT, OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

_____          _____
                Maker (Initials)                                Holder (Initials)

18. **DEFINITIONS:** The word Maker shall be construed interchangeably with the words Borrower or Payer and the word Holder shall be construed interchangeably with the words Lender or Payee. In this Note, singular and plural

© Copyright 1999 - 2005
Commercial Brokers Association
All Rights Reserved



CBA Form No. N-1A
LPB 28A
Promissory Note
Rev. 12/99
Page 3 of 3

## PROMISSORY NOTE
### (CONTINUED)

words shall be construed interchangeably as may be appropriate in the context and circumstances to which such words apply.

19. **ADDITIONAL TERMS AND CONDITIONS:** (check one)

   **a.** ☐  None.

   **b.** ☐  As set forth on the attached "Exhibit A" which is incorporated by this reference.

   **(Note: If neither "a" nor "b" is checked, then option "a" applies.)**

20. **THIS NOTE IS SECURED BY** ☐ **DEED OF TRUST,** ☐ **MORTGAGE,** ☐ **OTHER** _____ **OF EVEN DATE.**

   Maker (signatures)

   _____    _____

   _____    _____


   Maker's address for all notices given by Holder under this Note: _____.

---

### DO NOT DESTROY THIS NOTE

**WHEN PAID this original Note together with the Deed of Trust securing the same, must be surrendered to the Trustee for cancellation and retention before any reconveyance can be processed.**

Nov. 10, 2010

MLM 17-02-20 N

AFTER RECORDING MAIL TO:

Name _____

Address _____

City, State, Zip _____

Filed for Record at Request of:

---

Short Form
## DEED OF TRUST

THIS DEED OF TRUST, made this _____ day of _____, _____, between _____, as GRANTOR(S), whose address is _____, and _____, as TRUSTEE, whose address is _____, and _____, as BENEFICIARY, whose address is _____.

    Grantor(s) hereby irrevocably grants, bargains, sells, and conveys to Trustee in trust, with power of sale, the following described property in _____ County, Washington:

_____

Assessor's Property Tax Parcel/Account Number: _____

TOGETHER WITH all the tenements hereditaments and appurtenances, now or hereafter thereunto belonging or in anywise appertaining, and the rents, issues, and profits thereof and all other property or rights of any kind or nature whatsoever further set forth in the Master Form Deed of Trust hereinafter referred to, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

THIS DEED IS FOR THE PURPOSE OF SECURING PERFORMANCE of each agreement of Grantor(s) incorporated by reference or contained herein and payment of the sum of _____ DOLLARS ($_____) with interest thereon according to the terms of a promissory note of even date herewith, payable to Beneficiary or order and made by Grantor(s); all renewals, modifications or extensions thereof, and also such further sums as may be advanced or loaned by Beneficiary to Grantor(s), or any of his/her/their successors or assigns, together with interest thereon at such rate as shall be agreed upon.

By executing and delivering this Deed of Trust and the Note secured hereby, the parties agree that all provisions of Paragraphs 1 through 35 inclusive of the Master Form Deed of Trust hereinafter referred to, except such paragraphs as are specifically excluded or modified herein, are hereby incorporated herein by reference and made an integral part hereof for all purposes the same as if set forth herein at length, and the Grantor(s) hereby makes said covenants and agrees to fully perform all of said provisions. The Master Form Deed of Trust above referred to was recorded on the twenty-fifth (25th) day of July, 1968, in the Official Records of the offices of the County Auditors of the following counties in Washington in the book, and at the page designated after the name of each county, to-wit:

| COUNTY | BOOK OR VOL. | PAGE NO. | AUDITOR'S | COUNTY | BOOK OR VOL. | PAGE NO. | AUDITOR'S |
|---|---|---|---|---|---|---|---|
| Adams | 2 of Record. Instr. | 513-16 | 122987 | Lewis | 7 of Official Rec. | 839-842 | 725562 |
| Asotin | Microfilmed under Auditor's No. | | 101896 | Lincoln | 107 of Mortgages | 776-779 | 316596 |
| Benton | 241 of Official Rec. | | 592931 | Mason | Reel 48 | Frame 835-838 | 236038 |
| Chelan | 608 of Official Rec. | 695A-C | 681844 | Okanogan | 121 of Mortgages | 617-519A | 560658 |
| Clallam | 315 of Official Rec. | 1682-1685 | 383176 | Pacific | 213 of Official Rec. | 649-652 | 55707 |
| Clark | Aud. Microfilm No. | 195-198 | G-519253 | Pend Oreille | 27 of Mtgs. | 8-11 | 126854 |
| Columbia | 49 of Deeds | 702859-702862 | F 3115 | Pierce | 1254 of Mtgs. | 707-710 | 2250799 |
| Cowlitz | 747 of Official Rec. | 198-201 | 675475 | San Juan | 28 of Mtgs. | 459-462 | 69282 |
| Douglas | 125 of Mortgages | 234-237 | 151893 | Skagit | 19 of Official Rec. | 80-83 | 716277 |
| Ferry | 28 of Deeds | 120-123 | 153150 | Skamania | 41 of Mtgs. | 41-44 | 70197 |
| Franklin | 11 of Official Rec. | 413-416 | 309636 | Snohomish | 233 of Official Rec. | 540-543 | 2043549 |
| | | 138-141 | | | | | |

⊗ Nov. 10, 2010          N. JE 2010       LPB-20  7/97

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Garfield | Microfilmed under Auditor's No. | | 13044 | Spokane | 14 of Official Rec. | 1048-1051 | 376267C |
| Grant | 44 of Rec. Doc. | 373-378 | 538241 | Stevens | 109 of Mtgs. | 394-397 | 350635 |
| Grays Harbor | 21 of General | 31-34 | 207544 | Thurston | 454 of Official Rec. | 731-734 | 785350 |
| Island | 181 of Official Rec. | 710-713 | 211628 | Waukakum | 17 of Mortgages | 89-92 | 24732 |
| Jefferson | 4 of Official Rec. | 316-319 | 196853 | Walla Walla | 308 of Mtgs. | 711-714 | 495721 |
| King | 5690 of Mtgs. | 436-439 | 6382309 | Whatcom | 82 of Official Rec. | 855-858 | 1047622 |
| Kitsap | 929 of Official Rec. | 480-483 | 934770 | Whitman | 1 of Misc. | 291-294 | 382282 |
| Kittitas | 111 of Mortgages | 361-364 | 348693 | Yakima | 712 of Official Rec. | 147-150 | 2170555 |
| Klickitat | 101 of Mortgages | 107-110 | 131095 | | | | |

A copy of such Master Form Deed of Trust is hereby furnished to the person executing this Deed of Trust and by executing this Deed of Trust the Grantor(s) acknowledges receipt of such Master Form Deed of Trust.

The property which is the subject of this Deed of Trust is not used principally or primarily for agriculture or farming purposes.

The undersigned Grantor(s) requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at the address hereinbefore set forth.

WITNESS the hand(s) and seal(s) of the Grantor(s) on the day and year first above written.

By_____     By _____

By_____     By _____

By_____     By _____

By_____     By _____

STATE OF  _____)
                                                                              )-ss
COUNTY OF _____)

I certify that I know or have satisfactory evidence that _____
(is/are) the person(s) who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: _____

_____
Notary Public in and for the state of _____
My appointment expires: _____

STATE OF  _____)
                                                                              )-ss
COUNTY OF _____)

I certify that I know or have satisfactory evidence that _____
(is/are) the person(s) who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: _____

_____
Notary Public in and for the state of _____
My appointment expires: _____

**Westlake Associates, Inc.**
2810 Eastlake Avenue E,
Seattle, WA 98102
Phone: (206) 505-9400
Fax: (206) 505-9439

© Copyright 1999
Commercial Brokers Association
ALL RIGHTS RESERVED
CBA Form DTR
Rev'd 12/99
Page 1 of 1

CBA 

## DEED OF TRUST RIDER

CBA Text Disclaimer:  Text deleted by licensee indicated by strike.
New text inserted by licensee indicated by small capital letters.

This Deed of Trust Rider is attached and made a part of that Short Form Deed of Trust (Limited Practice

Board Form No. 20) dated _____, _____ in which

Grantor is _____,

Trustee is _____,

and Beneficiary is _____.

       The following modifications to the Master Form Deed of Trust are hereby incorporated:

       (1)   <u>New Subsection 1(e)</u>.  The following new Subsection 1(e) is hereby added: "(e)  All inventory, equipment, goods, supplies and materials now or hereafter owned by Grantor and located at or on or used in connection with the property, and all present and future accounts, general intangibles, chattel paper, documents, instruments, deposits accounts, money, contract rights, insurance policies, and all proceeds, products, substitutions and accessions therefor and thereto. This Deed of Trust is intended to constitute a security agreement under the Uniform Commercial Code of Washington, and a UCC-2 Fixture Filing."

       (2)   <u>Section 5</u>.  This Section is amended to provide that the amount of late charge shall be five cents ($0.05) per dollar, but if any different amount is provided in the promissory note, the amount in the promissory note shall control.

       (3)   <u>Section 25</u>.  Subsection 25(c) is amended to read: "(c) the property is sold or transferred without the Holder's consent."  The following new subsection 25(e) is also added: "or (e) in one or more transaction, fifty percent (50%) or more of the stock, ownership, or partnership interests in, or the right to control, the Grantor is sold or transferred without the Holder's consent."

INITIALS: BUYER: _____ DATE: _Nov. 10, 2010_ SELLER: _____ DATE: _12-02-2010_

       BUYER: _____ DATE: _____ SELLER: _____ DATE: _____